## Shoemaker v. Henry

*Donald Marritz,* for plaintiffs.
*John A. Brogan,* for defendant.

SPICER, *P.J.,* June 6, 1984—Plaintiff filed a complaint in which they alleged they had been tenants of defendant and had deposited money as security. Plaintiffs alleged they moved December 14, 1983, that defendant did not provide an itemization of damages as required by the Landlord and Tenant Act, 68 P.S. §250.512(a), and had not returned the deposit to them. Accordingly, they claim as damages double the amount of the deposit.

The act, in §250.512(c) provides that a landlord who fails to return the difference between the security deposit and actual damages to the leasehold premises "shall be liable in assumpsit to double" the difference.

Defendant filed his answer and denied that plaintiffs had provided him with a new address. He admitted he had not provided plaintiffs with an itemization of damages. He then set out a counterclaim for damages to the leasehold.

Plaintiff filed preliminary objections in the nature of a demurrer and a motion to strike. They cite 250.512(b) of the act, which states:

"(b) Any landlord who fails to provide a written list within thirty days as required in subsection (a), above, shall forfeit all rights to withhold any portion of sums held in escrow, including any unpaid interest thereon, or to bring suit against the tenant for damages to the leasehold premises."

There are, perhaps, reasons why this matter should not be decided on preliminary objections. However, both sides are content to have the issue determined on the present state of the record. It would appear the act, supra, creates affirmative defenses and not conditions precedent. This would make inappropriate disposition on preliminary objections. However, we will ignore any technical reasons for postponing a decision until pleadings are closed.

Neither party has been able to provide the Court with authority relevant to the rather narrow issue presented in this case. The sole question we must answer concerns the meaning of "liability" as that word is used in §250.152(e), which provides:

"(e) Failure of the tenant to provide the landlord with his new address in writing upon termination of the lease or upon surrender and acceptance of the leasehold premises shall relieve the landlord from any liability under this section."

Plaintiffs argue the meaning of that *liability* is limited to exposure to a legal obligation to pay money. They also point to language in subsection (b) which unequivocally states that a landlord who fails to provide an itemized list "*shall* (Emphasis added.) forfeit all rights . . . to bring suit against the tenant for damages to the leasehold premises." According

to plaintiffs, this language means that an absolute consequence of a failure to provide an itemization is a forfeiture of rights.

However, the legislature has used *shall* in §250.512(c) "the landlord shall be liable . . . to double the amount" and plaintiffs concede subsection 512(e) applies to this liability. Furthermore, the provisions of subsection 512(a) would seem to authorize deduction of unpaid rents from the security deposit whether or not a damage list is provided.

The court, therefore, finds that the use of the word *shall* is not significant as it pertains to the issue of this case.

Defendant argues that the legislature obviously meant to bestow a broad meaning on liability by extending the relief created in subsection 512(e) to "any liability under this section." Defendant submits that it would have been an easy matter for the legislature to have specifically referred to subsection 512(c) or to have combined subsections (c) and (e) to limit the relief as plaintiffs argue.

We deal with consumer protection legislation, as plaintiffs suggest. Even so, there must have been some reason for the requirement that a tenant give notice of a new address. We cannot believe the only purpose was a negative one, that is, to cancel a right to double damages for failure to comply. A more rational explanation is that its purpose was to provide a landlord with an address to which the damage list could be sent.

There is no indication that the legislature intended that *liability* have a technical meaning in §250.512(e). Therefore, the word is to be construed according to its normal and approved usage. 1 Pa. C.S. §1903. The definition of *liability* includes

"something that works to one's disadvantage." *Liable* is defined:

"1. Legally bound or obligated, as to make good any loss or damage that occurs in a transaction; responsible 2. likely to have, suffer from, etc.; exposed to or subject to [*liable* to heart attacks] 3. subject to the possibility of; likely (*to* do, have, get, etc. something unpleasant or unwanted [*liable* to cause hard feelings]

Webster's New World Dictionary,
(Second College Edition 1970)."

Although most of the cited cases in Black's Law Dictionary (5th Ed. 1979) deal with an obligation to pay money, that work states that *liability*:

"has been referred to as one of the most comprehensive significance, including almost every character of hazard, or responsibility, absolute, contingent, or likely."

We conclude, therefore, that the term "liability" applies to the consequences set forth in subsection 512(b) resulting from a failure to provide a damage list. We hold that defendant may recover damages to the demised premises notwithstanding a failure to comply with subsection 512(b) if it is proven that plaintiffs failed to comply with subsection 512(e).

We note that some commentators have apparently reached this same conclusion. See, H. Gladstone and R. Cherry, "Residential Security Deposits," Representing Residential Landlords and Tenants, Vol. I pp. 138-9 (PBI 1984).

The attached order is entered.

## ORDER OF COURT

And now, this June 6, 1984, plaintiffs' preliminary objections are dismissed. They shall have 20 days in which to file a reply.